UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE,

Plaintiff,

v.

WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT,

Defendant.

Case No. 26-cv-04738-TSH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 12

## I. INTRODUCTION

Plaintiff John Doe, proceeding through his guardian ad litem, alleges Defendant West Contra Costa Unified School District discriminated against him based on his disability. Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the first four of six claims pleaded in the complaint. ECF No. 12. Plaintiff filed an Opposition (ECF No. 19)[1] and Defendant filed a Reply (ECF No. 20). The Court finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.[2]

[1] After Plaintiff failed to file an opposition in compliance with Civil Local Rule 7, the Court ordered him to show cause why this case should not be dismissed for failure to prosecute and failure to comply with court deadlines. ECF No. 16. The Court ordered Plaintiff to file a declaration by September 17 and simultaneously file an opposition or statement of nonopposition. Having reviewed Plaintiff's response, the Court **DISCHARGES** the show cause order.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 15.

## II. BACKGROUND

Plaintiff is a non-verbal autistic four-year-old preschool student who attended the Cameron Early Intervention Program at Ford Elementary School, a school within the West Contra Costa Unified School District. Compl. ¶ 3, ECF No. 1. Enrollment in the program is limited to District residents from birth to age five who have been assessed and identified as having special needs, and every program member is therefore a child with a disability. *Id.* ¶ 40.

During the week of May 18, 2025, Plaintiff's teacher and her paraprofessionals were out sick. *Id.* ¶¶ 8–12. On May 21 the teacher told parents she would return the following day but asked for parent volunteers because her paraprofessionals remained out. *Id.* ¶ 11. On May 22 classes in the program were combined "due to the absence of regular paraprofessionals," and supervision was provided by staff from another class. *Id.* ¶ 13.

That same day, during outdoor play, Plaintiff was left unattended inside a play structure and was bitten twice by another student. *Id.* ¶ 14. A paraeducator responded after hearing Plaintiff yell and cry and found him with bite marks near his ear, screaming in distress. *Id.* At meetings in June 2025, District personnel confirmed that supervision that day had been inadequate; the teacher acknowledged she did not know who had been watching Plaintiff; and the District disclosed that the child who bit Plaintiff had a history of biting other students, had previously required support to control his or her behavior, and "was not supposed to be alone with other students." *Id.* ¶¶ 22–24.

Separately, the complaint alleges Plaintiff's Individualized Education Program (IEP) requires pediatric occupational therapy services, that no such services were provided from at least January 2025 through the May 2025 incident, and that the District admitted occupational therapy services had not been provided. *Id.* ¶¶ 24, 45, 55, 66, 77.

Plaintiff alleges he has suffered physical injury, emotional distress, and behavioral regression, and that his family incurred the cost of transferring him to another school. *Id.* ¶¶ 27–28.

On May 19, 2026, Plaintiff filed his complaint, pleading six claims: (1) Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; (2) Section 504 of the Rehabilitation

Act, 29 U.S.C. § 794; (3) California Government Code § 11135; (4) California Education Code § 220; (5) negligence per se; and (6) negligent supervision, retention, and training. Compl. ¶¶ 38-100.

Defendant filed the present motion on August 26, 2026, seeking dismissal of the first four claims.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to

amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. ADA and Rehabilitation Act

ADA Title II and Rehabilitation Act Section 504 both prohibit public entities from discriminating against people with disabilities by denying them access to or participation in that entity's benefits, services, and programs. *See* ADA Title II, 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); Rehabilitation Act § 504, 29 U.S.C. § 794 ("[N]o otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). "Because there is no significant difference in the analysis of rights and obligations created by the ADA and the Rehabilitation Act," courts "collectively address the claims under both statutes." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 n.11 (9th Cir. 2021) (cleaned up).[3] "To establish a claim under the ADA or Rehabilitation Act, [Plaintiff] must show: (1) he is a qualified individual with a disability; (2) he was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance (for the Rehabilitation Act claim) or is a public entity (for the ADA claim)." *Id.* at 968-69 (cleaned up) (quoting *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016)).

[3] "The few differences between the two—jurisdictional requirements, the causal standard for liability, the entity with regulatory responsibility, and the consistency across regulations . . . —are not implicated here." *Id.* (citing *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1098-99 (9th Cir. 2013)).

As Plaintiff seeks damages, he must also prove "intentional discrimination" by showing either discriminatory animus or deliberate indifference. *A.G.*, 815 F.3d at 1204. In the Ninth Circuit, this means that a plaintiff's pleading must satisfy a standard that shows deliberate indifference on the part of the defendant. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Notice may be established where the plaintiff "alerted the public entity to his need for accommodation" or "where the need for accommodation is obvious, or required by statute or regulation." *Id.* The failure to act "must be more than negligent, and involves an element of deliberateness." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 469 (9th Cir. 2015) (citing *Duvall*, 260 F.3d at 1139).

The Court finds Plaintiff plausibly alleges he is a qualified individual with a disability under both the ADA (Compl. ¶ 40) and Rehabilitation Act (*id.* ¶ 50), and that the District receives federal financial assistance (*id.* ¶ 56). There also appears to be no dispute that Defendant is a public entity. Accordingly, the Court's analysis turns on whether a reasonable accommodation was denied.

"A plaintiff may satisfy prong two by showing that the federally funded program denied her services that she needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations." *A.G.*, 815 F.3d at 1204 (citing *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010)). "A plaintiff can also satisfy prong two by showing that the program denied her meaningful access to public education through another means, such as by violating a regulation that implements section 504's prohibitions." *Id.* (citing *Mark H. v. Lemahieu,* 513 F.3d 922, 938-39 (9th Cir. 2008)); *see also Alexander v. Choate,* 469 U.S. 287, 301 (1985) (interpreting section 504 to "requir[e] that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers").

Defendant argues the complaint fails because it (1) contains no allegations regarding how the District denied Plaintiff a specific reasonable accommodation and (2) fails to allege what the

District could or should have done to accommodate Plaintiff's specific disabilities as related to the alleged biting incident. Mot. at 8. Defendant argues: Plaintiff "merely alleges he was a special education student in the Program and that he was harmed by another student as a result of alleged negligent supervision due to staffing shortages. Plaintiff does not allege any changes or measures that should have been implemented to prevent his alleged harm." *Id.*

Defendant also argues Plaintiff fails to allege the requisite standard of intentional discrimination and deliberate indifference for a damages award. *Id.* at 8-9. It argues Plaintiff "wholly fails" to allege the District "had knowledge of any harm that was substantially likely to occur, as he has not asserted facts to support that he alerted the DISTRICT to his need for accommodation." *Id.* at 9. As such, Defendant argues "Plaintiff cannot allege how any denial of the same would make the likelihood that he would be bitten by another student more likely to occur." *Id.* Defendant also argues Plaintiff does not allege any educational decision relating to him that was so inappropriate as to constitute bad faith or gross misjudgment. *Id.*

As to Plaintiff's allegation that his IEP requires occupational therapy services, Defendant argues he fails to sufficiently allege that the reason he did not receive these services was due to his disability. *Id.* at 10.

In response, Plaintiff argues: (1) the District denied him a safe learning environment based on his disability; and (2) the District denied him the benefits of his IEP based on his disability.

**1. Supervision and Staffing Theory**

Plaintiff's first theory is that the District denied him a safe learning environment by combining program classes, permitting parent volunteers to be used because of staffing shortages, and leaving a child with known biting behavior unattended. Opp'n at 2–5. Plaintiff argues the need for an accommodation was "obvious, or required by statute or regulation" within the meaning of *Duvall*, pointing to California Education Code sections 44807 and 56001(n) and California Code of Regulations, title 5, section 5552. *Id*. at 3.

Section 44807 requires teachers to "hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess." Cal. Educ. Code § 44807. Section 5552 requires certificated supervision of pupils during recess where playground supervision is not



United States District Court
Northern District of California

otherwise provided. Cal. Code Regs. tit. 5, § 5552 ("Where playground supervision is not otherwise provided, the principal of each school shall provide for the supervision by certificated employees of the conduct and safety, and for the direction of the play, of the pupils of the school who are on the school grounds during recess and other intermissions and before and after school."). Both impose supervision obligations applicable generally to students in California public schools. They do not, on their own, establish that a particular supervision arrangement constitutes a disability-related accommodation. The fact that a plaintiff with a disability was injured by another student does not automatically transform a generally applicable safety violation into disability discrimination. Reading it otherwise would convert every violation of a generally applicable state education statute into a federal disability-discrimination claim whenever the injured pupil happens to be disabled. *See Csutoras*, 12 F.4th at 966 ("Essentially, Csutoras argues that any instance of peer-on-peer harassment or bullying directed towards a disabled student (regardless of the harasser's motivations or the school's precautions) should, at a minimum, create a colorable claim of disability discrimination against the school and a fact issue for the jury to resolve. But such an expansive interpretation is foreclosed by the law governing private suits for damages, which requires that plaintiffs meet the high bar of deliberate indifference—i.e., where 'the school's response to the harassment or lack thereof was *clearly unreasonable* in light of the *known circumstances*.'") (emphasis in original) (quoting *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020)); *Garedakis v. Brentwood Union Sch. Dist.*, 183 F. Supp. 3d 1032, 1046-47 (N.D. Cal. 2016) *aff'd*, 738 F. App'x 387 (9th Cir. 2018), *withdrawn and superseded on denial of reh'g en banc*, 756 F. App'x 669 (9th Cir. 2018), *and aff'd*, 756 F. App'x 669 (9th Cir. 2018) ("The problem with this theory, as defendants point out, is that it could be applied to any ADA or § 504 claim by a student against a school district, and would eliminate the requirement that an ADA or § 504 plaintiff show that the alleged discrimination was 'by reason of' his/her disability, which is an element of claims under both the ADA and § 504."); *M.P.G. v. Antioch Unified Sch. Dist.*, 2023 WL 5723683, at *6 (N.D. Cal. Sept. 5, 2023) (where plaintiff, a disabled student, alleged he was assaulted by another student in violation of the ADA and section 504, court found that "if being placed in a classroom with other disabled students were enough to

support a cause of action under the ADA and Section 504, then it would be enough merely to allege that a plaintiff suffers from a disability, and the case law makes clear that this is not the case.") (citing *Pagan v. Brown*, 2009 WL 2581572, at *11 (N.D.N.Y. Aug. 19, 2009) ("The fact that plaintiff may be disabled, and that he alleges that he was subject to abuse, simply does not constitute a discrimination claim under the ADA or the Rehabilitation Act.")); *J.R. by and Through Ringer v. Lakeport Unified Sch. Dist.*, 2018 WL 6726999, at *3 (N.D. Cal. Dec. 21, 2018) (where minor with special needs brought claims against school district for failure to prevent bullying and sexual harassment, court denied motion to dismiss Title IX claim, finding plaintiff satisfied deliberate indifference standard, but granted motion to dismiss ADA and Section 504 claims because "Plaintiff has failed to allege discrimination based on plaintiff's disability").

Section 56001(n), in contrast, addresses special education programs and expresses "the intent of the Legislature that . . . [a]ppropriate qualified staff are employed, consistent with credentialing requirements, to fulfill the responsibilities of the local plan and positive efforts are made to employ qualified disabled individuals." Cal. Educ. Code § 56001(n). But the provision does not prescribe a particular staffing ratio, identify which employee must supervise which student at recess, or otherwise establish the specific supervision arrangement Plaintiff claims was required on May 22, 2025. Nor does Plaintiff identify authority establishing that section 56001(n), by itself, constitutes a statutory accommodation within the meaning of *Duvall*, which speaks of accommodations "required by statute or regulation." 260 F.3d at 1139.

Moreover, the complaint does not allege that parent volunteers provided supervision on May 22. Rather, Plaintiff alleges that on May 21 his teacher requested parent volunteers, Compl. ¶¶ 11–12, and that on May 22, the day of the incident, "classes in the Program were combined due to the absence of regular paraprofessionals, and *supervision was provided by staff from another class*," *id.* ¶ 13 (emphasis added). Plaintiff's opposition repeatedly characterizes the alleged supervision as having been provided by "uncertificated parent volunteers," *see* Opp'n at 4, 8, 10, but the Court may not supplement the complaint with factual allegations supplied only in an opposition brief. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Because Plaintiff's staffing argument depends on that premise, it fails on the pleading as it stands.

The complaint does allege that District employees knew the student who bit Plaintiff had a history of biting other students and was not supposed to be alone with other students. Compl. ¶ 24. It also alleges that Plaintiff was left unattended in a playground structure and that District employees later acknowledged inadequate supervision. *Id.* ¶¶ 22, 85. Those allegations may plausibly support Plaintiff's state law claims for negligence (which Defendant does not move to dismiss), but they do not, without more, plausibly establish that the District denied Plaintiff a disability-related accommodation or acted with deliberate indifference to a federally protected disability right under the ADA or the Rehabilitation Act.

In sum, the Court finds Plaintiff has failed to allege he was denied a reasonable accommodation to the extent the ADA and section 504 claims are based on his supervision and staffing theory. The Court therefore **GRANTS** Defendant's motion as to this theory. Because Plaintiff may be able to cure this deficiency by alleging facts identifying the accommodation sought, who was responsible for providing it, and facts connecting the alleged failure to Plaintiff's disability rather than merely to a general staffing shortage, dismissal of this theory is **WITH LEAVE TO AMEND**.

**2. IEP and Occupational Therapy Theory**

Plaintiff separately alleges his IEP required pediatric occupational-therapy services, that no such services were provided beginning at least in January 2025, and that District personnel acknowledged that the services had not been provided. Compl. ¶¶ 24, 45, 55. Plaintiff argues the "IEP, and the services specified therein, are obvious, reasonable accommodations to ensure Plaintiff's meaningful access to his education," and the denial of his OT services "for at least 4 months sufficiently alleges DISTRICT's deliberate indifference." Opp'n at 5-6.

At the pleading stage, the Court finds these allegations are sufficient. Unlike the supervision theory, the alleged occupational-therapy service is expressly tied to Plaintiff's disability and is alleged to have been incorporated into his IEP. Plaintiff further alleges that the omission persisted for at least four months. As to knowledge, the governing standard is that a plaintiff "establishes the requisite knowledge (or notice) on behalf of the defendant when she shows that she 'alerted the public entity to [her] need for accommodation (or where the need for

accommodation is obvious, or required by statute or regulation).'" *A.G.*, 815 F.3d at 1204 (brackets in original) (quoting *Duvall*, 260 F.3d at 1139). The notice requirement is satisfied here because Plaintiff alleges the District "admitted that occupational therapy services had not been provided." Compl. ¶¶ 24, 45, 55. As to failure to act, the omission is alleged to have persisted for more than four months and, once again, to have been acknowledged by the District itself. At the pleading stage, and drawing inferences in Plaintiff's favor, that suffices.

Defendant argues Plaintiff has not alleged that the failure to provide occupational therapy services was itself because of disability. Mot. at 10. But Plaintiff alleges those services were the disability-related service through which he was to receive meaningful access to the educational program. A public entity may be liable where, with the requisite intent, it denies a disabled person meaningful access or a reasonable accommodation. *See Lemahieu*, 513 F.3d at 938 ("[A] public entity can be liable for damages under § 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."); *A.G.*, 815 F.3d at 1204, 1206. And the complaint alleges more than a bare failure to implement an IEP. It alleges occupational therapy was a service required by Plaintiff's IEP because of his disability, that the District knew the service had not been provided, and that the omission continued for months. Accepting those allegations as true and drawing reasonable inferences in Plaintiff's favor, the complaint plausibly alleges the requisite notice and deliberate indifference.[4]

Accordingly, the Court **DENIES** Defendant's motion to dismiss the ADA and Rehabilitation Act claims to the extent they are based on the alleged failure to provide occupational-therapy services required by Plaintiff's IEP.

**3. Summary**

Defendant's motion to dismiss Plaintiff's ADA and Rehabilitation Act claims is **GRANTED IN PART and DENIED IN PART**. The claims may proceed insofar as they are

[4] In its argument regarding Education Code section 220, Defendant also appears to argue that the complaint, including as to Plaintiff's ADA and section 504 claims, "does not state, for example, whether services were provided following the incident, or after it was discovered that the services were allegedly not being provided." Mot. at 16. But this appears to be a matter for discovery rather than a pleading defect, as there is no indication that a plaintiff needs to plead the remedial steps a defendant may later have taken.

based on the alleged failure to provide occupational therapy services required by Plaintiff's IEP. The supervision-and-staffing theory is dismissed without prejudice, subject to Plaintiff's ability to amend consistent with the discussion above.

**B. California Government Code Section 11135**

Plaintiff's third cause of action alleges disability discrimination under California Government Code section 11135, which prohibits discrimination on specified grounds, including mental or physical disability, in covered state-funded programs. Cal. Gov't Code § 11135(a). Section 11135(b) states that a violation of Title II of the ADA is a violation of § 11135. Subdivision (b) also states that California law may provide greater protections than the ADA. Section 11135 is identical to section 504 of the Rehabilitation Act, except the entity must receive state financial assistance rather than federal financial assistance. *See Martin v. City of Los Angeles*, 162 Cal. App. 3d 559, 562 (1984); *Fry v. Saenz*, 98 Cal. App. 4th 256, 261 (2002) (holding that section 11135 is California Law requiring state-funded programs to comply with Title II of the ADA and Section 504 of the Rehabilitation Act).

Defendant initially argued Plaintiff's claim fails because the complaint does not adequately allege disparate impact under section 11135. Mot. at 10–11 (citing *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011)). Plaintiff responds that he is proceeding under an intentional-discrimination theory, not solely a disparate-impact theory, and that section 11135 is not limited to disparate-impact claims. Opp'n at 7–8. In its reply, Defendant clarifies that it does not contend disparate impact is the sole mechanism for a section 11135 claim and recognizes that section 11135 permits intentional-discrimination claims. Reply at 7–8. Plaintiff alternatively argues the complaint alleges disparate impact because the challenged staffing practices allegedly affected the special-education Program and its students rather than students in other classes. Opp'n at 8.

Section 11135(b) expressly incorporates Title II's disability protections, and Plaintiff has pleaded an ADA theory that, as discussed above, survives at least in part. *See* Cal. Gov't Code § 11135(b). And the parties now agree that section 11135 is not limited to disparate-impact claims. Because courts have found that a plaintiff who states a disability-discrimination claim under the

ADA may also state a claim under section 11135, the Court analyzes Plaintiff's intentional-discrimination theory consistently with the ADA theory. *See Cal. Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1245 (N.D. Cal. 2013) ("Having found that Plaintiffs state a claim under the ADA, the Court also finds that Plaintiffs state a claim under § 11135."). Here, Plaintiff alleges the District receives state financial assistance, Compl. ¶ 67, and failed to provide occupational therapy services required by his IEP, *id.* ¶ 66. Accepting these allegations as true, and because the Court has concluded that the corresponding ADA and Rehabilitation Act theory is adequately pleaded, Plaintiff has stated a plausible section 11135 claim on that theory.

However, because section 11135 incorporates Title II's disability protections, Plaintiff's section 11135 claim rises and falls with the ADA claim, and the supervision-and-staffing theory therefore fails under section 11135 for the same reasons it fails under Title II. Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion as to Plaintiff's section 11135 claim, on the same terms as his ADA and Rehabilitation Act claims.

### C. California Education Code Section 220

Plaintiff's fourth cause of action alleges discrimination under California Education Code section 220, which prohibits disability discrimination "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Plaintiff alleges the District receives state financial assistance. Compl. ¶ 78.

Defendant raises two arguments: (1) Plaintiff failed to comply with the administrative procedures incorporated through section 262.3(d); and (2) the complaint does not allege sufficiently severe, pervasive, and objectively offensive harassment or deliberate indifference. Mot. at 11-16.

#### 1. Administrative Procedures

Defendant argues Plaintiff's section 220 claim is barred because he did not file a complaint with the District within six months of the incident and did not appeal to the California Department of Education and wait 60 days, as Defendant reads Education Code section 262.3(d) to require. Mot. at 12–14. As such, Defendant requests the Court dismiss this claim without leave to amend.

United States District Court
Northern District of California

*Id*. at 14.

Section 262.3(d) provides that a person alleging a violation of section 220 may seek civil remedies after the statutory waiting period following an appeal to the California Department of Education. Section 262.3(c), however, states: "Nothing in this chapter shall be construed to require an exhaustion of the administrative complaint process before civil law remedies may be pursued." Plaintiff argues that subsection (c) eliminates an exhaustion requirement and, alternatively, that subsection (d)'s limitation applies only where the local educational agency timely apprised the complainant of the right to file an administrative complaint. Opp'n at 9.

In *Annamaria M. v. Napa Valley Unified School District*, the court addressed the apparent tension between subsections (c) and (d). There, the court concluded that the provisions can be reconciled by requiring a claimant to pursue administrative remedies through the point of filing an appeal with the California Department of Education and waiting the statutory 60-day period, rather than requiring completion of the entire administrative process. 2006 WL 1525733, at *11–12 (N.D. Cal. May 30, 2006). In *A.W. v. Santa Rosa City Schools*, the court followed *Annamaria* and held that section 262.3(c) does not eliminate the requirements of section 262.3(d). 2025 WL 1180725, at *7 (N.D. Cal. Apr. 22, 2025) ("The court agrees with *Annamaria*'s statutory interpretation that section 262.3(c) does not excuse the administrative exhaustion requirements of section 262.3(d)."). The Court finds the reasoning of *Annamaria* and *A.W.* persuasive. Thus, a plaintiff bringing a section 220 claim ordinarily must at least allege compliance with section 262.3(d)'s requirement concerning an appeal to the California Department of Education and the applicable waiting period, subject to the statutory qualifications contained in section 262.3(d).

Here, the complaint alleges compliance with mandatory pre-suit requirements, Compl. ¶¶ 32–37, but it does not allege Plaintiff filed a discrimination complaint with the District or appealed to the California Department of Education. In its Reply, Defendant emphasizes that section 262.3(d)'s notice qualification concerns the statutory moratorium and does not eliminate the antecedent administrative steps where no local complaint was filed. Reply at 9–10. Section 262.3(d) provides that the moratorium applies only if the local educational agency appropriately and timely apprised the complainant of the right to file a complaint. *A.W.* quoted that qualification

in full but had no occasion to construe it, because the plaintiff there did not rely on it. 2025 WL 1180725, at *7. The Court therefore relies on the statute itself. By its terms the qualification conditions the "moratorium," which subdivision (d) measures from "the filing of an appeal to the department." Cal. Educ. Code § 262.3(d). A waiting period presupposes something to wait upon. Where, as here, the complaint does not allege that Plaintiff filed a complaint with the local educational agency or appealed to the Department at all, no moratorium ever attached, and the qualification does not excuse the antecedent steps that *Annamaria* and *A.W.* require. Plaintiff's contrary reading would let a plaintiff who never invoked the administrative process bypass it altogether, which is not how *Annamaria* reconciled subdivisions (c) and (d). Thus, because the complaint does not allege Plaintiff pursued the administrative process to the point required by section 262.3(d), the Court **GRANTS** Defendant's motion to dismiss his section 220 claim. Dismissal is **WITH LEAVE TO AMEND** because the present pleading does not establish that Plaintiff could not allege facts satisfying the statutory requirement or otherwise show the requirement is inapplicable. *See Lopez*, 203 F.3d at 1127.

**2. Sufficiency of the Section 220 Claim**

Because dismissal is with leave to amend, the Court reaches Defendant's alternative arguments so that any amended complaint may be framed with the benefit of this ruling. Defendant alternatively argues Plaintiff has not alleged conduct sufficiently severe, pervasive, and objectively offensive to support damages under section 220, and he has not adequately alleged deliberate indifference. Mot. at 14-16.

"To establish a claim under section 220, Plaintiff must show (1) he suffered severe, pervasive and offensive harassment that effectively deprived him of the right of equal access to educational benefits and opportunities; (2) the District had actual knowledge of the harassment; and (3) the District responded with deliberate indifference. *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008).[5] Section 220 does not impose liability for damages against a

[5] In his opposition, Plaintiff argues *Donovan* does not set the applicable standard here because "it states the elements of a section 220 claim for peer sexual orientation harassment - not disability discrimination." Opp'n at 10. But the same standard applies to both. *See Wormuth v. Lammersville Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1129 (E.D. Cal. 2018) ("to succeed on his

funding recipient based on principles of respondeat superior and/or constructive notice; it "contemplates actual notice to the funding recipient, with an opportunity to take corrective action before a private action may lie." *Donovan*, 167 Cal. App. 4th at 597.

As with his first and second claims, Plaintiff alleges harm based on the unsupervised program member who bit him and that he did not receive OT services outlined in his IEP. Compl. ¶¶ 76-77.

Courts apply the same analysis to section 220 claims as to ADA and section 504 claims. *See M.P.G.*, 2023 WL 5723683, at *8; *Wormuth*, 305 F. Supp. 3d at 1129. Thus, to the extent Plaintiff bases his section 220 claim on allegations that the District denied him a safe learning environment by combining program classes, permitting parent volunteers to be used because of staffing shortages, and leaving a child with known biting behavior unattended, the Court finds he has not stated a plausible claim against the District for the same reasons discussed above. *See M.P.G.*, 2023 WL 5723683, at *8 ("For the same reasons as explained above in analyzing M.P.G.'s ADA and Rehabilitation Act claims, the Court finds M.P.G. has not shown the harassment he faced was because of his disability. Without this showing, plaintiff fails to state a claim that he suffered 'pervasive' and 'severe' disability-based harassment."); *Wormuth*, 305 F. Supp. 3d at 1129 ("For the same reasons as explained above in analyzing plaintiff's ADA claim, plaintiff has not shown the harassment he faced was because of his disability. [citation] (no genuine dispute of fact regarding link between plaintiff's disability and the bullying he faced, nor any evidence that the District should have known of such a link). Without this showing, no reasonable juror could find plaintiff suffered 'pervasive' and 'severe' disability-based harassment or that the District had 'actual knowledge' of it."). The Court therefore **GRANTS** Defendant's motion as to this theory. Because Plaintiff may be able to cure this deficiency by alleging facts identifying the accommodation sought, who was responsible for providing it, and facts connecting the alleged failure to Plaintiff's disability rather than merely to a general staffing shortage,

---

section 220 claim, plaintiff must show he suffered severe, pervasive and offensive discrimination or harassment on the basis of disability, which effectively deprived him of equal access to educational benefits and opportunities.") (citing *Donovan,* 167 Cal. App. 4th at 579).



United States District Court
Northern District of California

dismissal of this theory is **WITH LEAVE TO AMEND**.

As to Plaintiff's allegations regarding his IEP, he again alleges it required pediatric occupational-therapy services, that no such services were provided beginning at least in January 2025, and that District personnel acknowledged that the services had not been provided. Compl. ¶¶ 24, 77. For the same reasons discussed above, the Court finds these allegations sufficient at the pleading stage, as they are expressly tied to Plaintiff's disability, he alleges the District "admitted that occupational therapy services had not been provided," and the omission is alleged to have persisted for more than four months. *See Lemahieu*, 513 F.3d at 938; *A.G.*, 815 F.3d at 1204, 1206.[6] Accordingly, this alternative ground would not support dismissal of Plaintiff's section 220 claim to the extent it rests on the alleged failure to provide occupational therapy services required by his IEP. The claim is nonetheless dismissed on the administrative exhaustion ground stated above.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion as follows:

1) ADA and Rehabilitation Act: Defendant's motion is **GRANTED IN PART and DENIED IN PART**. The claims may proceed insofar as they are based on the alleged failure to provide occupational therapy services required by Plaintiff's IEP. The supervision-and-staffing theory is dismissed without prejudice, subject to Plaintiff's ability to amend consistent with the discussion above.
2) California Government Code Section 11135: Defendant's motion is **GRANTED IN PART and DENIED IN PART** on the same terms as the ADA and Rehabilitation Act claims.
3) California Education Code Section 220: Defendant's motion is **GRANTED WITH**

---

[6] As noted above, although Defendant argues Plaintiff's section 220 claim "does not state, for example, whether services were provided following the incident, or after it was discovered that the services were allegedly not being provided," Mot. at 16, the Court finds this is not relevant at the pleading stage, as there is no indication that a plaintiff needs to plead the remedial steps a defendant may later have taken.



United States District Court
Northern District of California

United States District Court
Northern District of California

**LEAVE TO AMEND**.

If Plaintiff chooses to do so, he may file an amended complaint within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 20, 2026

THOMAS S. HIXSON
United States Magistrate Judge